UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 06-11567-RGS

PUBLIC SERVICE MUTUAL
INSURANCE, as subrogee of Hillside
Realty Trust, d/b/a Hillside Motel,

v.

EMPIRE COMFORT SYSTEMS, INC.

MEMORANDUM AND ORDER ON
MOTION OF DEFENDANT EMPIRE COMFORT SYSTEMS, INC.,
FOR SUMMARY JUDGMENT

August 22, 2008

STEARNS, D. J.

This is a subrogation claim involving an insurance loss caused by an April 11, 2004 fire at the Hillside Motel (Motel) in Mattapoisett, Massachusetts. Plaintiff Public Service Mutual Insurance (PSMI), which insured the Motel, places blame for the fire on a DV-210 wall heater manufactured by defendant Empire Comfort Systems, Inc. (Empire). Empire now moves for summary judgment. Oral argument on the motion was heard on May 29, 2008. For the reasons stated, Empire's motion will be ALLOWED.

FACTUAL BACKGROUND

The facts are presented in the light most favorable to PSMI as the nonmoving party, supplemented by certain other facts that are not in dispute, chief among them the cause of the fire. The State Fire Marshal and the Mattapoisett Fire Department arson investigator agreed that the fire originated in a mattress that had been left leaning against a gas-fired DV-210 wall heater in Unit 110 of the Motel. The heater was controlled by a wall

thermostat that had an adjustable temperature range of between 50°F and 80°F. The mattress was in contact with the heater for 10 to 30 minutes before ignition. There was no evidence of a gas leak from the heater or other malfunction.

Jayesh Patel bought the 17-unit Motel in 1998. Immediately after the purchase, he had Empire heaters installed in all of the Motel's units. The heaters were recommended by Patel's heating contractor. The contractor gave Patel copies of the owner's manual. Patel recalls seeing warning labels affixed to the heaters.

Nahari Patel, Jayesh Patel's father-in-law, worked as the Motel's caretaker.[1] Among his chores was the day-to-day maintenance of the units. On April 11, 2004, at about 11:30 a.m., Nahari Patel was changing the linens in Unit 110. He saw that a guest had ripped a telephone cord from a socket behind the bed. He stripped the bed, removed the mattress and leaned it against the wall heater while he reconnected the telephone wire. He then went to the Motel office. Ten minutes later, he heard the smoke alarm go off in Unit 110.[2] When he returned to the room, he saw the mattress engulfed by smoke and fire.[3] He pulled the mattress away from the heater, but the flames flared. He fled the room

---

[1] Nahari Patel had been employed at the Motel for some eight or nine years prior to the fire.

[2] The Mattapoisett Fire Department received the fire alarm at 11:42 a.m.

[3] Jordan Collyer, a Lieutenant with the Mattapoisett Fire Department, took a contemporaneous statement from Nahari Patel, which was interpreted by his son-in-law as Nahari Patel does not speak or read English. Nahari Patel admitted leaving the mattress unattended against the wall heater. Collyer stated in his investigation report that he was nearly 100 percent certain that the fire "was accidental in nature beginning from a mattress that was leaning up against a heater." Sergeant Jeanne Stewart of the Massachusetts State Fire Marshal's Office, who also investigated the fire, came to the identical conclusion.

2

and called police. Nahari Patel admitted later at a deposition that he had been warned by his son-in-law not to place combustible items on the heater.[4]

---

[4]At his deposition Nahari Patel testified as follows:

| | |
|---|---|
| Q. | Prior to the fire on April 11th of 2004, were you told about any hazards concerning the heater? |
| A. | No. |
| Q. | For instance, were you told not to place paper or fabric in contact with the heater? |
| A. | You mean when the heater is on? |
| Q. | Yes. |
| A. | I remember something to that effect, but I'm not sure. |
| Q | Would that have been something told to you by Jayesh, for example? |
| A. | Yeah, it was Jayesh. |
| Q. | And do you know why it was important not to put paper or fabric in contact with the heater? |
| A. | So that it does not catch fire. |

\* \* \* \* \*

| | |
|---|---|
| Q. | And I think you said in response to some of the other lawyer's questions earlier that Jayesh told you – if I heard this right, and you correct me if I'm wrong – that Jayesh told you not to put paper or fabric in contact with the heater at some point in time. |
| A. | Yeah, it was Jayesh Kumar. Jayanti Lai did not – Mr. Jayanti did not used to come to the hotel. |
| Q. | Okay. And do you remember when it was that Jayesh told you that? |
| A. | Right at the – in the beginning, at the start. |
| Q. | So back in like 1998? |
| A. | Back then, you know, when it first got cold, he explained that to me. |
| Q. | When it first got cold? |
| A. | When it first got cold; first time we turned the heaters on. |
| Q. | And did Jayesh ever tell you – give you any information about placing anything else either on top of or up against the heater, or was it just paper or fabric? |
| A. | He told me that you should not put anything on top of those. |
| Q. | On top of the heater? |
| A. | Yeah, on top of the heater. |
| Q. | Did he tell you anything about leaning or resting something up against the front of the heater? |
| A. | Nothing like that. |

PSMI contends that this testimony demonstrates that Nahari Patel "was unaware that a

The DV-210 heater has been manufactured by Empire since the 1970s. John Davis, an Empire Quality Assurance Service Representative and employee of the company since 1980, testified that prior to this litigation, there had been no claims of injury or lawsuits involving the DV-210.[5] Labels on the outer surface of the heater warn the user "not to touch. Keep children, clothing, furniture, gasoline and other liquids having flammable vapors away." The labels are affixed during the manufacturing process. The owner's manual also warns against placing combustibles or flammable products in close proximity to the heater.[6]

PSMI filed this Complaint against Empire on June 29, 2006, in the Suffolk Superior Court. Empire removed the case to this court on August 31, 2006, on diversity grounds. PSMI amended the Complaint on November 10, 2006, elaborating on the original claims. The Amended Complaint alleges three warranty-based theories of liability: negligence (Count I), strict liability (Count II), and breach of warranty (Count III). The Amended

---

bed leaning against [the heater] for a brief time could lead to a fire. . . . [He was] only aware of dangers regarding items placed on top of the heater, not leaned towards the side." Opposition Memorandum, at 7.

[5]Empire states (without contradiction) that the DV-210 is listed by Underwriters Laboratories (UL) and the Canadian Standards Association (CSA), both of which have tested the heater to ensure compliance with the American National Standards Institute (ANSI) requirements for gas-fired appliances. The DV-210 is certified in accordance with ANSI standard 221.86 and CSA standard 232.

[6]On page 1 of the manual, the purchaser is warned that "[i]f the information in this manual is not followed exactly, a fire or explosion may result causing property damage, personal injury or loss of life." A prominent box on page 2 of the manual contains the warning that "[c]lothing or other flammable material should not be placed on or near the appliance." PSMI argues that the warnings in the owner's manual are not directed at "potential everyday user[s] of the product." Opposition Memorandum, at 7.

4

Complaint also alleges a breach of contract (Count IV).  After several requests by the parties to enlarge the time for discovery were granted, Empire filed this motion for summary judgment asserting, among other things, that PSMI had failed to produce expert testimony on the issues of an alleged design or manufacturing defect.  At the summary judgment hearing, counsel for PSMI conceded that the lack of expert testimony likely precluded these claims, and agreed that the case rested essentially on the failure to warn claim.  To ensure completeness, the court will address all of the original claims.

DISCUSSION

A district court grants summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. R. 56(c); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue as to a material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant in turn bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe."  Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).  "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Consequently, "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (internal quotations and citations omitted).

Negligence - Count I

In the Amended Complaint, PSMI alleged that Empire was negligent in the design, manufacturing, testing, inspection, distribution, and marketing of the DV-210 wall heater and negligent in "failing to warn consumers that the direct-vent wall furnace unit could cause or contribute to fire and/or fire damage, failing to make appropriate recommendations concerning [its] use," and failing to "withdraw or recall" the allegedly defective heater from the market. In its Opposition Memorandum, PSMI narrowed the claims to two basic contentions: that Empire had "failed to exercise reasonable care in warning potential users of the hazard of the DV-210," and that the DV-210 "was negligently designed and manufactured."[7]

There are four elements to a negligence claim: "(1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) causation; and (4) actual loss by the plaintiff." See Delaney v. Reynolds, 63 Mass. App. Ct. 239, 241 (2005). Summary judgment is rarely granted in negligence actions; however, it is appropriate if "a plaintiff has no reasonable expectation of proving that 'the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct.'" Hebert v. Enos, 60 Mass. App. Ct. 817, 820-821 (2004), quoting Kent v. Commonwealth, 437 Mass. 312, 320 (2002). Negligence questions may be decided as a matter of law "where no rational view of the evidence would warrant a finding of negligence." Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass. App. Ct. 901, 902 (1987). See also Roderick v. Brandy Hill Co., 36 Mass.

---

[7]As previously noted, the scope of the Amended Complaint was for all practical purposes narrowed further at the hearing to the failure to warn claim only.

App. Ct. 948, 949 (1994) (same); cf. Bergendahl v. Massachusetts Elec. Co., 45 Mass. App. Ct. 715, 720 (1998) (summary judgment is proper when a danger is open and obvious).

### Negligent Failure to Warn

A manufacturer of a product which it "knows or should know is dangerous" is under a duty to warn persons who foreseeably will come in contact with that product. MacDonald v. Ortho Pharm. Corp., 394 Mass. 131, 135 (1985) (citation omitted). Massachusetts law recognizes that a product can be "defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings . . . and the omissions of the instructions or warnings renders the product not reasonably safe." Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 21 (1998), quoting Restatement (Third) of Torts: Products Liability § 2(c) (1998). The warning must be "comprehensible to the average user and . . . convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." MacDonald, 394 Mass. at 140, quoting Ortho Pharm. Corp. v. Chapman, 180 Ind. App. 33, 49 (1979). If an adequate warning is supplied, there is a presumption that it will be read and heeded. Knowlton v. Deseret Med., Inc., 930 F.2d 116, 123 (1st Cir. 1991); Cottam v. CVS Pharm., 436 Mass. 316, 327 (2002). A failure to give adequate warnings, however, will not establish negligence where the lack of such warnings is not the proximate cause of a plaintiff's injuries. Laaperi v. Sears, Roebuck & Co., 787 F.2d 726, 730 (1st Cir. 1986).

On the other hand, a manufacturer has no duty to warn a plaintiff who is (or should

be) fully aware of the risks posed by a product.  Colter v. Barber-Greene Co., 403 Mass. 50, 59 (1988) ("Where the danger presented by a given product is obvious, no duty to [warn] exists because a warning will not reduce the likelihood of injury.").  See O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000) (a landowner is under no obligation to warn visitors of the dangers of diving headfirst into the shallow end of a swimming pool); Lanza v. EQR-Lincoln Lawrence, LLC, 69 Mass. App. Ct. 206, 208-209 (2007) (landowner and contractor had no duty to warn an appliance delivery man of the obvious dangers of moving precariously stacked building materials); Greenslade v. Mohawk Park, Inc., 59 Mass. App. Ct. 850, 853 (2003) (the risks of injury attendant to swinging on a rope are obvious).

It is undisputed that the DV-210 heater's labels and owner's manual warned of the danger of placing combustibles on or near the unit's heating surface, that the heater complied with ANSI and CSI safety standards, and that there had never been a claim made against Empire for any injury related to the use of the heater.[8]  It is further undisputed that the cause of the fire was Nahari Patel's placement of the mattress against the heater. Finally, Empire points to uncontroverted evidence that Jayesh Patel knew of the fire hazard posed by the heater and that he had explained the risk to his father-in-law (who could not read English).

PSMI responds that the "minuscule sticker placed towards the bottom of the heating

---

[8]The import of this fact is not that the lack of a prior complaint necessarily means that a product is not defective; rather, it is probative of the lack of forseeability of a particular risk by the manufacturer and a consequent lack of a duty to warn of that risk. Cf. Vassallo, 428 Mass. at 23.

unit" was inadequate to warn Jayesh Patel of the full extent of the risk. PMSI also contends that the written warnings were insufficient to apprise English-illiterate persons like Nahari Patel of the danger. The adequacy of the size and positioning of a warning label on a product is typically a jury issue. However, as PSMI points out, Nahari Patel would have been unable to read an English language label whatever its size or prominence.[9] A more appropriate framing of the issue might be whether it was reasonably foreseeable to Empire that a significant number of the users of its heaters would be non-English speaking persons like Nahari Patel.[10]

The dispositive point, however, is Empire's contention that the hazard of placing combustible material against a gas heater presents an open and obvious risk of danger to anyone of reasonable intelligence (regardless of his or her knowledge of English). While a manufacturer has a duty to warn foreseeable users of latent dangers attendant to the normal and intended use of a product, there is no duty *as a matter of law* to warn where a danger is obvious, or "where the plaintiff appreciated the danger substantially to the same extent as a warning would have provided." Carey v. Lynn Ladder & Scaffolding Co., Inc., 427 Mass. 1003, 1004 (1998). See also Uloth v. City Tank Corp., 376 Mass. 874, 881 (1978) (no duty to warn will be imposed if a warning will not reduce the likelihood of injury); Fiorentino v. A. E. Staley Mfg. Co., 11 Mass. App. Ct. 428, 436 (1981)

---

[9] PSMI suggests that a pictorial label might have provided a suitable warning. PMSI, however, has not offered an example or produced expert testimony on the subject.

[10] On the other hand, no reasonable jury could conclude that a manufacturer is obligated to post labels in the native language of every conceivable consumer, foreign or domestic, who might come in contact with its product.

(manufacturer or seller of a product is under no duty to warn of product-related dangers that are obvious, or to give warnings to someone who already knows of the product's hazardous propensities); Killeen v. Harmon Grain Prods., Inc., 11 Mass. App. Ct. 20, 24 (1980) (a manufacturer or retailer is justified, as matter of law, in the assumption that the dangers inherent in toothpicks are obvious to nearly all).  Cf. Costa v. Boston Red Sox Baseball Club,  61 Mass. App. Ct. 299, 303 (2004) ("[T]he potential for a foul ball to enter the stands and injure a spectator who is seated in an unscreened area is, as [a] matter of law, sufficiently obvious that the defendant reasonably could conclude that a person of ordinary intelligence would perceive the risk and need no additional warning.").[11]

While PSMI attempts to differentiate between the danger of placing an item like a mattress on top of (as opposed to against) a heating unit, the distinction is unconvincing. Putting aside the fictive "ordinarily intelligent plaintiff," Nahari Patel  understood that the unit was a heater, that it posed a fire danger, and that he could not leave combustible material in contact with its surface for more than a brief period of time.  He also testified

---

[11]The Massachusetts Supreme Judicial Court (SJC) has made clear that the "open and obvious" danger doctrine differs from the jury defense of assumption of risk and may be decided by a court as a matter of law where a dangerous condition is so obvious that a reasonable defendant would have concluded that an ordinarily intelligent plaintiff would perceive it without a warning.  See O'Sullivan, 431 Mass. at 205-206 ("Rather than evaluating a particular plaintiff's subjective reasonableness or unreasonableness in encountering a known hazard, the inquiry is an objective one that focuses, instead, on the reasonableness of the defendant's conduct.").  The O'Sullivan Court affirmed a summary disposition noting that the plaintiff could not satisfy even the indulgent test adopted by the New York Court of Appeals in Liriano v. Hobart Corp., 92 N.Y.2d 232 (1998).  In Liriano, the Court acknowledged that the open and obvious danger exception to a manufacturer's duty to warn is a jury "fact-specific" inquiry, but reasoned that "[w]here only one conclusion can be drawn from the established facts . . . the issue of whether the risk was open and obvious may be decided by the court as a matter of law." Id. at 242.

that he felt the heater before leaning the mattress against it and that it was "warm" to his touch. The court finds, as a matter of law, that a reasonably intelligent person in Nahari Patel's position would have perceived the fire risk resulting from leaving a mattress unattended against a functioning gas heater. PSMI's negligent failure to warn claim will therefore be dismissed as a matter of law.

### Negligent Design

To prevail on a claim of negligent design, PSMI must show the essential elements of any tort claim: injury, duty, breach of duty, and proximate cause. Ulwick v. DeChristopher, 411 Mass. 401, 408 (1991). There is no duty to design a product that is "risk free" or "risk proof." Morrell v. Precise Eng'g, Inc., 36 Mass. App. Ct. 935, 936 (1994). PSMI must show not only that the DV-210 wall heater at issue malfunctioned, but that the entire DV-210 product line was defective. One Beacon Ins. Co. v. Electrolux, 436 F. Supp. 2d 291, 295 (D. Mass. 2006), citing Restatement (Second) of Torts § 398 (1965). In evaluating the adequacy of a product's design, the fact-finder is to consider "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." Back v. Wickes Corp., 375 Mass. 633, 642 (1978). See also Uloth, 376 Mass. at 881 ("[T]here is a case for the jury if the plaintiff can show an available design modification which would reduce the risk without undue cost or interference with the performance of the machinery.").

Expert testimony (save in rare situations not applicable here) is required to support

a claim of a design defect. See Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993) (plaintiffs could not demonstrate that an electrical fan was defectively designed without expert testimony even where the fan was implicated in a fire); Fidalgo v. Columbus McKinnon Corp., 56 Mass. App. Ct. 176, 183 (2002) (defendant was entitled to a directed verdict as plaintiffs did not present expert testimony that there was a design defect in the foundry hooks that caused a one-half ton cope to break loose from a hoist). In this latter regard, "[a]n essential element of such a design flaw claim is that there be a safer alternative design." Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 26 (1st Cir. 2004). PSMI has offered no expert testimony regarding any identifiable defect in the DV-210 line of heaters or any alternative safer design. Without such expert testimony, the claim fails as a matter of law.

### Negligent Manufacturing

"A defect from manufacturing, as opposed to design, occurs when a product differs from identical products issued from the same manufacturer." Wasylow v. Glock, Inc., 975 F. Supp. 370, 377 (D. Mass. 1996) (interpreting Back, 375 Mass. at 636). A plaintiff must show that the defect existed at the time the product left the manufacturer. Smith v. Ariens Co., 375 Mass. 620, 626 (1978). On this claim, PSMI has offered no evidence that the DV-210 heater functioned improperly. Nahari Patel, who was cleaning the room where the fire occurred, testified that he had touched the heater and noticed that it was running normally at "medium heat." The fire investigators observed nothing to suggest that a malfunction of the heater caused the fire. Rather, the fire was caused by the placement of the mattress in direct contact with the heater. In the absence of any evidence of a malfunction or other

abnormality, PSMI's negligent manufacturing claim also fails as a matter of law.

### Strict Liability - Count II

"A federal court sitting in diversity jurisdiction and called upon in that role to apply state law is absolutely bound by a current interpretation of that law formulated by the state's highest tribunal." Daigle v. Maine Med. Ctr., Inc., 14 F.3d 684, 689 (1st Cir. 1994). There is no "strict liability in tort" action recognized by Massachusetts law apart from liability for breach of warranty under the Uniform Commercial Code, Mass. Gen. Laws ch. 106, §§ 2-314 and 2-318.[12]  See Swartz v. General Motors Corp., 375 Mass. 628, 631 (1978). This claim therefore fails as a matter of law.

### Breach of Warranty- Count III and Count IV

PSMI alleges breach of warranty and contract in Counts III and IV of the Complaint, arguing the same theories of negligent manufacture, design and deficient warnings, but in the context of an alleged breach of the warranties of merchantability and fitness for a particular purpose. PSMI contends that the DV-210 is unreasonably dangerous when used in a space (such as a motel room) where "any material found . . . that comes close to the heater could serve as an ignition device resulting in fire." Opposition Memorandum, at 11.

A warranty claim under Massachusetts law stands on a different footing than a

---

[12] Massachusetts warranty law has been interpreted as "congruent in nearly all respects" with the strict liability principles set out in Restatement (Second) of Torts § 402A (1965). See Haglund v. Philip Morris, Inc., 446 Mass. 741, 745-746 (2006) ("Warranty liability is as fully comprehensive as the strict liability theory of recovery in a great many other jurisdictions."), quoting Back, 375 Mass. at 640 ("[S]trict liability cases of other jurisdictions [are a] useful supplement to our own warranty case law as doctrine is the same.").

13

negligence claim, focusing on the product rather than on the conduct of the manufacturer or the user. Wasylow, 975 F. Supp. at 377, citing Colter, 403 Mass. at 61-62. The warranty of merchantability is governed by Mass. Gen. Laws ch. 106, § 2-314, which provides that goods must be "fit for the ordinary purposes for which such goods are used" and must "conform to the promises or affirmations of fact made on the container or label if any." Id. at §§ 2-314(2)(c) and (f). See also Cigna Ins. Co. v. Oy Saunatec, Ltd., 241 F.3d 1, 15 (1st Cir. 2001) ("Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions.").

The warranty of fitness for a particular purpose is similar to the warranty of merchantability but applies only "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Mass. Gen. Laws ch. 106, § 2-315, cited in Wasylow, 975 F. Supp. at 377. "A 'particular purpose' differs from an 'ordinary purpose' in that it 'envisages a specific use by the buyer which is peculiar to the nature of his business.'" Id. As with negligence, to sustain a warranty claim a plaintiff must establish that a product defect proximately caused his injury or damage. Id. at 379, citing Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 48 (1st Cir. 1991).

As previously noted, there is no evidence of a defect or malfunction with respect to the DV-210 unit, nor has PSMI provided any evidence that the heater did not adequately perform its intended use(s). Nor can the "particular purpose" claim be sustained. Jayesh Patel relied on the heating contractor, not Empire, in selecting the DV-210 heater for

installation in the Motel's units.[13]  Consequently, the warranty claims fail as a matter of law.[14]

## ORDER

For the foregoing reasons, Empire's Motion for Summary Judgment is <u>ALLOWED</u>. The Clerk will enter judgment for Empire and close the case.

SO ORDERED.

s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[13]Empire argues that an additional basis for dismissal of PSMI's warranty claim is that the Unit 110 heater has been lost.  PSMI took the heater following the fire and has been unable to locate it since.  Massachusetts allows for a broad range of remedies for spoliation of evidence including default, dismissal, exclusion of evidence, permitting adverse inferences against the spoliator, allowing the aggrieved party to present evidence about the pre-accident condition of the lost evidence and circumstances surrounding the spoliation, and instructions to the jury on adverse inferences that may be drawn from the spoliation.  See Smith v. Robertshaw Controls Co., 410 F.3d 29, 37 (1st Cir. 2005) (upholding summary judgment on the basis of late notice resulting in prejudice because of the loss of evidence.); Gath v. M/A-Com, Inc., 440 Mass. 482, 488 (2003) ("In a case involving spoliation, exclusion of evidence both sanctions the party responsible for destroying certain evidence and remedies the unfairness that such spoliation created."); Nally v. Volkswagen of Am., Inc., 405 Mass. 191, 197 (1989) (an expert's testimony should be excluded if the expert changes, destroys, or loses an item of physical evidence "in such circumstances that the expert knows or reasonably should know that that item in its original form may be material to litigation.").  "The rule excluding evidence as a remedy for spoliation is based on both the unfair prejudice that would otherwise result and the fact of a negligent or intentional destruction of physical evidence.  Spoliation, therefore, does not include a fault-free destruction or loss of physical evidence."  See Kippenhan v. Chaulk Serv., Inc., 428 Mass. 124, 127 (1998).  The dismissal of PSMI's Amended Complaint as a matter of law makes unnecessary an inquiry by the court into the degrees of fault and prejudice that the spoliation might have entailed.

[14]As the contract claim is derivative of the warranty claims, it also will be dismissed.